**STATE, ex rel BURNETT et v DUCY et**

Ohio Appeals, 2nd Dist.,
Fayette Co.

No. 250. Decided June 17, 1942.

Charles S. Hire, Washington C. H., Carrington T. Marshall, Columbus, for plaintiffs.

Norman McLain, Washington C. H., Richard Rankin, Washington C. H., for defendants.

### OPINION

**BY THE COURT:**

This matter is before this court on an original petition for mandamus, being brought in the name of the State of Ohio ex rel Howard B. Burnett and four others named as plaintiffs against James E. Ducy and four others as members of the City Council of the City of Washington and the City Council.

In the original petition, which has been amended at bar in the manner hereinafter pointed out, it is stated, in substance, that the relators filed in the office of the Board of Deputy State Supervisors certain petitions for recall of James E. Ducy and A. W. Duff as members of the City Council of the City of Washington, the relators being designated as a committee to represent petitioners.

It is further stated that the petitions for recall in accordance with §3515-71 GC (Article VII,) were filed with the Board of Deputy State Supervisors having thereon 912 approved signatures, being 37% of the votes cast at the preceding general election.

It is further stated that at a regular meeting of the City Council held on the 11th day of February, 1942, a motion was made to call an election in accordance with the statute to determine the question of removal of James E. Ducy and A. W. Duff, as members of the City Council and for the selection of a successor to each within the time limited by the statute; that upon the submission of said motion, two members voted in the affirmative and three in the negative.

At a special meeting of the Council, R. A. Sites made a motion that

the Council fix a date for the holding of the election to determine the question of the removal of Duff and Ducy as members of the Council and for the selection of a successor to each, which election should be held not less than thirty nor more than forty days from the fourth day of February, 1942, the date of the finding of the sufficiency of the petitions for recall by the Board of Election; said motion being seconded was submitted and received two votes in the affirmative and three in the negative: neither Ducy nor Duff have resigned; that no other regular meeting of the Council will be held within such limitation of time as will permit the calling of an election for the determination of the question of removal of said two members.

It is alleged that there is a mandatory duty upon the part of the members of the Council to fix a date for the purposes aforesaid; that nominating petitions for candidates to fill said offices have been prepared and will be filed within the time limited for such filing in accordance with the statute; that the majority of the members of the Council have taken adverse action and unless commanded by the order of the Court will continue to refuse to take appropriate action for the holding of the election and that the relators are without legal remedy. There is attached to the petition as Exhibit "A" a copy of the form of the signed petition for recall, as circulated. The prayer of the petition is that a writ of mandamus may issue commanding the defendants, as members of the Council, to proceed according to law to order an election and to certify such action to the Board of Elections, said election to be held within the time limited by statute.

The petition for recall, a copy of which is attached to the petition as an Exhibit, is to the effect that qualified electors of the city demand the removal of A. W. Duff and James E. Ducy as members of the Council of the City of Washington and the election of their successors as members of said Council. Said petition recites that said Duff and Ducy are and have been for more than one year acting members of the Council; that on the 10th day of December, 1941, they did by their votes render ineffective and circumvent the will of the voters of the city by continuing S. A. Murray in the office as a member of the Council for a period of two years notwithstanding the fact that said Murray had been defeated for reelection at the election held on the 4th day of November, 1941. This is the form of petition for recall referred to in plaintiff's petition as being signed by 37% of the electors.

Upon the filing of the petition in this Court, an alternative writ was issued.

Defendants, within proper time, filed a demurrer to the petition for the reasons, first, that the plaintiffs have not a legal capacity to sue, second, that the petition does not state facts which show a cause of action.

At a subsequent hearing, relators were permitted to amend the petition at bar so that it now reads "these relators being each and all electors of the City of Washington, Ohio".

Upon the hearing alluded to it was conceded that the allegation that the relators were electors of the City of Washington, Ohio, met the first ground of the demurrer that they had not a legal capacity to sue, and that if they were electors of the City they would

have, by virtue of that fact, the necessary capacity.

Counsel have filed comprehensive briefs which center about the question as to whether the provisions of §3515-71 are constitutional or whether they are violative of Article II, Section 38 of the Constitution. Such constitutional provision is, in substance, that laws shall be passed providing for the prompt removal from office, upon complaint and hearing of all officers * * * for any misconduct involving moral turpitude or for other cause provided by law; and this method of removal shall be in addition to impeachment or other method of removal authorized by the Constitution.

The other methods of removal provided by the Constitution are covered by §23, Article II, relating to the impeachment by the House of Representatives; §24, Article II relating to impeachment of State Officers and §17, Article IV relating to the removal of Judges by concurrent resolution of both Houses. It is apparent that none of these provisions of the Constitution directly relates to the removal by the process of recall of a member of the City Council.

The question then arises as to whether removal may be secured by statutory enactment which does not comply with any specific provision of the Constitution.

The action of the two members, of which complaint is made, is retaining Murray in office after he had been defeated at an election. This presupposes that after the election a vacancy occurred which was filled by electing the defeated councilman to a position in Council.

If we find that the Constitutional provision above recited, provides the only method of removal, we would be obliged to determine whether the action of the two recalcitrant members involved "moral turpitude". We would hesitate to hold that the retention in office of a defeated candidate by a proper vote constituted "moral turpitude" without more facts than are disclosed by the record.

It is urged by counsel for plaintiffs that the provision of §38, Article II providing "and this method of removal shall be in addition to the methods authorized by the Constitution" permits the Legislature, under the general provision of Article II, §1, defining in whom the legislative power is vested and providing "the legislative power of the State shall be vested in a General Assembly" to enact that statute under which it is sought to secure the removal of the two members of Council.

Counsel for plaintiff cites in support of the authority granted by §1 of Article II the case of Baker v Cincinnati, 11 Oh St 534; Cass v Dillon, 2 Oh St 607; Lehman v McBride, 15 Oh St 573; State, ex rel v Smith, 102 Oh St 591.

Broadly stated, the position of counsel for the relator is to the effect that Article II of §1 of the Constitution provides ample authority for the Legislature to enact the section now under examination; that the provisions of the Constitution above pointed out do not furnish the exclusive method of securing the removal of a public official from office.

It is also maintained that where the cause of removal is other than for any misconduct involving moral turpitude, there may be a proper legislative procedure provided for in addition to the specific constitutional provisions above pointed out, and it is emphasized that Article II of §38 provides for removal "for other cause provided by law; and this method of remov-

al shall be in addition to impeachment or other methods of removal authorized by the Constitution."

We have endeavored to give full weight to the argument of counsel on this point, but find ourselves confronted with the decision of State, ex rel v Brown, 105 Oh St 479.

We can tersely state the effect of the syllabi that in 1912 the people adopted §38, Article II, containing the provision that laws shall be passed providing for the prompt removal from office, upon complaint and hearing, of all officers, etc., and that by this provision the people plainly provided that such removal shall be only upon complaint and hearing.

"Syllabus 4. Section 2713 GC passed by the General Assembly prior to 1912, by virtue of the schedule of the Constitution and the inconsistency and conflict between such statute and §38, Article II is repealed."

Counsel for the respondents on the other hand maintain that §38, Article II provides the exclusive remedy for the removal of the present officers. Counsel point to the fact that such removal can only be "upon complaint and hearing" and that there has concededly been no complaint or hearing afforded to such officers in the case at bar. Respondents point to the case of State, ex rel v Brown, 105 Oh St 479, in which senior counsel for plaintiff, while Chief Justice of the Supreme Court, concurred. It is not necessary to review this case at length, but the Court holds that by adoption of §38, Article II as part of the Constitution of 1912,

"2. By this section they plainly provided that such removal should be made only upon complaint and hearing.

"3. What the Constitution grants no statute may take away."

Syllabus 4 holds, in substance, that §2713 providing for the summary removal of a county treasurer is violative of this provision of the Constitution.

This case is of much interest and invites close scrutiny.

We have read the case carefully and studied it in all the aspects which present themselves, and conclude that until such case is overruled that we are bound to follow it. Under it §3515-71 █ is repugnant to the constitutional provision for the removal of public officers and therefore we must hold that the entire proceeding had under the statute is unconstitutional, and that the general demurrer to the petition is well taken and should be sustained.

It is urged by relators that respondents have the opportunity to be "heard" during the process of the election and that there could be no more comprehensive method of being heard than that of defending one's position before the electors. This interpretation of what is meant by "upon complaint and hearing" does not commend itself to us and clearly is not endorsed in the Brown case above cited.

We may now give consideration to §3515-71 GC, which is urged as the basis of the right to proceed against these respondents, to determine whether, even if we admit that it does not violate the constitution, the petition states facts sufficient to constitute a cause of action. We will examine the statute briefly, placing our own emphasis upon those parts which we think of importance. The statute

is headed "Removal by Recall" and provides for the procedure. Any elective officer may be removed by the qualified voters under the procedure there set out.

(1) A petition signed by a certain per cent of qualified electors demanding the election of the successor to the person sought to be removed shall be filed with the Board of Elections which petition shall contain a short general statement of the grounds upon which the removal is sought.

(2) If the petition be sufficient, the council shall fix a day for the holding of an election to determine the question of his removal, and for the selection of a successor to each officer named in said petition. The election authorities shall cause publication of notice of the holding of such election.

It is provided that "The question of the removal of any officer shall not be submitted to the electors until he shall have served for at least one year of the term during which he is sought to be recalled." This is a very salutary provision and provides that before a man may be removed from office by recall he shall have served one year which may be regarded as a probationary period in which he could show his worth and value and during which time some of the bitterness of the election may have passed.

We are of the opinion that before an order could properly issue to the Board of Elections, that the petition should state ▆▆▆▆▆ definitely that the person sought to be removed falls within the provision of the statute. A failure to do this is a failure to state a cause of action.

One of the more recent pronouncements of the Supreme Court upon the functions of the writ of mandamus is found in State, ex rel. Mettler v Stratton, decided by the Supreme Court December 17, 1941, opinion by Turner, J. (139 Oh St 86).

We arrive at the conclusion that the demurrer to the petition must be sustained for failure of petition to state that the members have been in office more than one year. Inasmuch as the relators bring their action under this statute we determine the case, for the reason, in addition to our conclusion that the act is unconstitutional, that under the statute, as written, relators are not entitled to a writ on the showing made by the petition by reason of failure to make the necessary allegation.

The general demurrer is sustained. Writ denied with leave to plead further.

GEIGER, PJ, BARNES & HORNBECK, JJ., concur.